IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

No. 15-0128

_____

FILED

**April 7, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

NATIONSTAR MORTGAGE, LLC
f/k/a CENTEX HOME EQUITY COMPANY,
Defendant Below, Petitioner

v.

ADAM WEST and BETHANY WEST,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Putnam County
Honorable Joseph K. Reeder
Civil Action No. 13-C-131

REVERSED AND REMANDED

_____

Submitted:  March 2, 2016
Filed: April 7, 2016

D. Kyle Deak, Esq.
Troutman Sanders LLP
Raleigh, North Carolina

Jason E. Manning, Esq.
Jonathan M. Kenney, Esq.
Troutman Sanders LLP
Virginia Beach, Virginia
Counsel for Petitioner

Colten Lewis Fleu, Esq.
Jennifer S. Wagner, Esq.
Mountain State Justice, Inc.
Clarksburg, West Virginia
Counsel for Respondents

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

SYLLABUS

1.  "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."  Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2.  The omission of an "opt out" provision in an agreement that permits the signatories to reject arbitration is just one of multiple factors to consider in evaluating a claim of procedural unconscionability.  As a result, the omission of an "opt out" provision is not in itself sufficient evidence that an arbitration agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability.

3.  "'A party to a contract has a duty to read the instrument.'  Syllabus point 5, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986)."  Syl. Pt. 4, *American States Ins. Co. v. Surbaugh*, 231 W.Va. 288, 745 S.E.2d 179 (2013).

LOUGHRY, Justice:

The petitioner, Nationstar Mortgage, LLC ("Nationstar"), seeks to reverse the January 13, 2015, order of the Circuit Court of Putnam County, denying its motion to compel arbitration. The underlying case involves allegations of predatory lending practices and abusive and unlawful debt collection in connection with a mortgage loan Nationstar issued to the respondents, Adam and Bethany West (the "Wests"). Ruling on the petitioner's motion to compel arbitration, the circuit court concluded that the arbitration provision is both procedurally and substantively unconscionable. Upon our review of this matter, we find that the circuit court erred in deciding that the arbitration agreement is unenforceable. Accordingly, we reverse and remand this matter for referral to arbitration.

## I. Factual and Procedural Background

On July 25, 2003, the Wests entered into a loan agreement with Nationstar for the principal amount of $76,500. As part of the mortgage loan transaction, the Wests both signed a contractual rider entitled "Arbitration Agreement." Pursuant to the agreement, either party could choose to have a dispute resolved by binding arbitration, administered by the American Arbitration Association ("AAA") under the commercial arbitration rules then in effect. In all capital letters, located immediately above the signatory lines on the one-page rider was the following disclaimer:

1

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS ARBITRATION AGREEMENT. YOU UNDERSTAND AND AGREE THAT YOU ARE GIVING UP THE RIGHTS TO SEEK REMEDIES IN COURT INCLUDING THE RIGHT TO A JURY TRIAL; YOUR ABILITY TO COMPEL OTHER PARTIES TO PRODUCE DOCUMENTS OR TO BE EXAMINED IS MORE LIMITED IN ARBITRATION THAN IN A LAWSUIT; AND, YOUR RIGHTS TO APPEAL OR CHANGE AN ARBITRATION AWARD ARE VERY LIMITED.

On May 2, 2013, the Wests filed a complaint in the Circuit Court of Putnam County against the petitioner and Mark Greenlee[1] arising from the origination and servicing of the mortgage loan issued by Nationstar.[2] Nationstar removed the civil action to the United States District Court for the Southern District of West Virginia based on diversity jurisdiction. Purportedly to destroy diversity, the Wests filed an amended complaint in which they replaced the allegations previously asserted against Mark Greenlee with similar averments against Jeffrey Moore.[3] The Wests filed a motion, which was granted by order entered on October 21, 2013, to remand the case to state court.

---

[1]Mr. Greenlee, a West Virginia resident, was named as a defendant because he was the alleged appraiser for the subject mortgage loan.

[2]In their complaint, the Wests alleged predatory lending, unconscionable contract, and fraud as to Nationstar. Regarding Mr. Greenlee, they asserted dishonesty, misrepresentation, and breach of professional standards.

[3]Mr. Moore, a licensed real estate appraiser and a West Virginia resident, was named as a defendant based on his alleged appraisal of the property for which the Wests obtained a mortgage loan from Nationstar. Because the filings related to removal are not included in the appendix record, this Court has no basis upon which to address Nationstar's contention with regard to diversity jurisdiction.

On August 1, 2014, Nationstar filed a Motion to Compel Arbitration. The Wests filed a second amended complaint on October 13, 2014, asserting two additional counts predicated on the alleged unconscionability of the arbitration rider.[4] At a hearing on the petitioner's Motion to Compel Arbitration on November 21, 2014, the Wests submitted a self-executed affidavit stating that they could not afford "substantial arbitration costs."[5] During the hearing, the Wests informed the circuit court of their willingness to submit to arbitration provided that Nationstar would agree to the use of the AAA consumer rules of arbitration. The petitioner declined to agree to altered rules because the AAA consumer rules provide they are not designed for disputes involving real estate transactions and the subject arbitration rider expressly calls for use of the AAA commercial rules.[6]

By final order entered on January 13, 2015, the circuit court denied Nationstar's motion to compel arbitration. Citing the Wests' lack of sophistication in financial matters and the absence of an "opt out" provision[7] by which the borrowers could

---

[4]One count set forth allegations of an "Unconscionable Delegation Provision Within the Arbitration Clause" and the other asserted an "Unconscionable Arbitration Clause."

[5]No advance notice had been provided to Nationstar regarding the affidavit or its contents.

[6]The AAA consumer rules were purportedly not in effect at the time the arbitration rider was executed by the Wests.

[7]*See State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W.Va. 341, 752 S.E.2d 372 (2013) (recognizing existence of "opt out" provision as factor which supported finding that arbitration contract was not unconscionable).

reject the arbitration clause and still obtain the loan funds, the circuit court found that the arbitration agreement was procedurally unconscionable. Secondarily, the circuit court ruled that the agreement was substantively unconscionable, looking to the one-sided nature of the promises exchanged[8] as well as the "oppressive costs associated with arbitration." It is from this ruling that Nationstar seeks relief.

## II. Standard of Review

As this Court recently held in syllabus point one of *Credit Acceptance Corporation v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013), "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In cases, such as this, where the challenge to the arbitration clause is based on unconscionability, the issue presented is a question of law controlled by contract principles. As with all questions of law, our review of the trial court's conclusion is plenary. *See Brown ex rel. Brown v. Genesis Healthcare Corp. ("Brown I")*, 228 W.Va. 646, 680, 724 S.E.2d 250, 284 (2011), *rev'd on other grounds sub nom. Marmet Health Care Center, Inc. v. Brown*, __ U.S. __, 132 S.Ct. 1201 (2012); Syl. Pt. 1, *Chrystal*

---

[8]Under the arbitration agreement, Nationstar had the right to proceed in court with respect to foreclosure, to obtain prejudgment injunctive relief, appointment of a receiver, and claims related to damages arising from the Wests default of the loan terms.

4

*R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). We proceed to determine whether the circuit court committed error in refusing to refer the underlying matter to arbitration.[9]

## III. Discussion

Maintaining that the arbitration agreement is enforceable, Nationstar argues that the arbitration rider is neither procedurally nor substantively unconscionable. As further evidence of the trial court's error, Nationstar cites to the circuit court's failure to recognize the presumptive validity of the enforceability of the arbitration agreement.[10] Nationstar contends the circuit court wrongly imposed a burden on it to demonstrate the agreement was specifically bargained for and that the Wests had the ability to reject arbitration.

[9]The trial court claimed its authority to consider whether the arbitration provision was enforceable arose from the specific challenge to the delegation provision as unconscionable. While the Wests did aver unconscionability of the delegation clause in their second amended complaint, there is no specific delegation clause in the contract at issue. Thus, the trial court's authority to address the enforceability of the arbitration clause arose not from the challenge to the delegation clause but from the additional allegation raised by the Wests in the second amended complaint that the arbitration clause itself was unconscionable. *See generally Brown I*, 228 W.Va. at 675, 724 S.E.2d at 279; *see also State ex rel.TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 254, 692 S.E.2d 293, 297 (2010) (discussing authority of court, under severability doctrine, to address contractual-based challenges to arbitration clause such as fraud, duress, or unconscionability).

[10]As the Wests observe, Nationstar misapprehends the nature of the presumption. While there has long been a presumption that the parties intended to resolve matters through arbitration where an arbitration clause is included in an agreement, that presumption is subject to challenge based on fraud, duress, unconscionability, or other valid contractual defenses. *See* Syl. Pt. 3, *Board of Educ. v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1979); Syl. Pt. 9, *Brown I*, 228 W.Va. 646, 724 S.E.2d 250.

5

We examine the issue of unconscionability pursuant to the approach set forth in *Brown I.* "Under West Virginia law, we analyze unconscionability in terms of two components parts: procedural unconscionability and substantive unconscionability." 228 W.Va. at 681, 724 S.E.2d at 285. To conclude that a contractual term is unenforceable on grounds of unconscionability requires a finding that the provision in issue "is both procedurally and substantively unconscionable." *Id.* at 658, 724 S.E.2d at 262, syl. pt. 20, in part. And, as we observed in *Brown I*, "[t]he burden of proving that a contract term is unconscionable rests with the party attacking the contract." *Id.* at 680, 724 S.E.2d at 284.

## A. Procedural Unconscionability

Addressing the elements of what constitutes procedural unconscionability, we stated in syllabus seventeen of *Brown I*:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies, include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

228 W.Va. at 657, 724 S.E.2d at 261.

6

In ruling on the issue of procedural unconscionability, the trial court focused on the lack of "evidence in the record that the arbitration provision was specifically bargained for or that Plaintiffs [Wests] had the ability to opt-out of resolving potential disputes through arbitration." Viewing Nationstar as more experienced in financial matters, the trial court concluded that the "Plaintiffs were simply not in a position to fully understand the fact that they were relinquishing the right to utilize the court system in signing the arbitration agreement."

Upon distillation, the Wests' challenge to the arbitration rider is grounded in the adhesive nature of the contract. While quick to acknowledge that "a contract of adhesion is not, in-and-of-itself, unconscionable," the Wests assert that an "imbalance in bargaining power, unfair surprise, and absence of meaningful choice" all combined to render this particular mortgage contract unconscionable. Unfairly reducing Nationstar's response to this issue as an agreement that deserves enforcement based solely on its endorsement,[11] the Wests contend that "Nationstar has presented no meaningful basis to reverse the circuit court's Order." We disagree.

---

[11]In actuality, Nationstar merely framed the issue in this case as "whether a duly signed arbitration agreement . . . [could] be avoided by inferences of illegitimacy that are devoid of factual support and seek to undermine and reverse the presumptive legitimacy of arbitration agreements themselves."

7

In full recognition of the realities of consummating standardized business transactions[12] and the attendant unworkability of individualized bargaining[13] this Court has stated: "[T]here are adhesion contracts that deserve to be enforced and others that do not[.]" *State ex rel. AT&T Mobility v. Wilson*, 226 W.Va. 572, 578, 703 S.E.2d 543, 549 (2010). In rejecting a procedural unconscionability challenge predicated on the "take-it-or leave-it" basis of an adhesion contract, a federal district court recently remarked:

> Courts around the country have recognized that the need for pre-printed form contracts is a stark reality of today's mass-production/consumer culture. Despite even severe disparities in bargaining power, these agreements are most often enforced, at least as long as they comport with the reasonable expectations of the parties. A contrary rule would slow commerce to a crawl.

*In re Managed Care Litig.*, No. 00-1334-MD, 2009 WL 855963, at *5 (S.D. Fla. 2009) (internal citations omitted).

As we discussed in *State ex rel. Dunlop v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002), contracts of adhesion are routinely executed without the signatory's full reading

---

[12]As we observed in *Brown I*, "'[t]here is nothing inherently wrong with a contract of adhesion. Most of the transactions of daily life involve such contracts that are drafted by one party and presented on a take it or leave it basis. They simplify standard transactions[.]'" 228 W.Va. at 682, 724 S.E.2d at 286 (quoting John D. Calamari, Joseph M. Perillo, *Hornbook on Contracts*, § 9.43 (6th ed. 2009)); *see also State ex rel. Dunlop v. Berger*, 211 W.Va. 549, 557, 567 S.E.2d 265, 273 (2002) (stating that "'a rule automatically invalidating adhesion contracts would be completely unworkable'") (citation omitted).

[13]*See Brown I*, 228 W.Va. at 682, 724 S.E.2d at 286 ("'One of the purposes of standardization is to eliminate bargaining over details of individual transactions. . . .'") (quoting *Restatement (Second) of Contracts* § 211 cmt. b [1981]).

8

or comprehension of the specified terms:

> Customers do not in fact ordinarily understand or even read the standard terms. They trust to the good faith of the party using the form and to the tacit representation that like terms are being accepted regularly by others similarly situated. *But they understand that they are assenting to the terms not read or not understood, subject to such limitations as the law may impose*.

*Id.* at 558, 567 S.E.2d at 274 (quoting *Restatement* (*Second*) *of Contracts* § 221 cmt. b [1981]). In reviewing an adhesion contract to determine whether principles of fairness compel us to decide against the contract's enforcement, we examine whether "'it imposes terms beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable terms.'" *Brown I*, 228 W.Va. at 683, 724 S.E.2d at 287 (citation omitted); *see also State ex rel. Richmond American Homes v. Sanders*, 228 W.Va. 125, 135, 717 S.E.2d 909, 918-19 (2011) (explaining that unconscionability analysis requires inquiry into fairness of contract as whole based on facts and circumstances of particular case, observing that "contractual provisions may be unconscionable in some situations but not in others").

The grounds upon which the Wests rely to assert procedural unconscionability are an alleged imbalance in bargaining power, unfair surprise, and absence of meaningful choice. Because contracts of adhesion are by definition typically prepared by a party with more power, we do not view that factor as persuasive in itself. *See Williams v. Jo-Carroll Energy, Inc.*, 890 N.E.2d 566, 571 (Ill. App. 2008) ("[J]ust because a contract is prepared by a party in a superior bargaining position, without allowing the other party to negotiate any

9

terms, does not mean that an included arbitration clause is unconscionable."). On the issue of the Wests' lack of financial sophistication, we have only the trial court's conclusory finding to that effect. *See State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W.Va. 341, 358, 752 S.E.2d 372, 389 (2013) (rejecting procedural unconscionability challenge to an arbitration agreement based, in part, on failure of record to support trial court's finding that mortgage loan borrowers "lacked sophistication and financial knowledge to a degree that rendered the contract unenforceable"). And, given the placement of the arbitration language–immediately above their signature lines and in all capital letters, we find the averment of unfair surprise to be similarly unpersuasive. *See id*. (considering location of terms "conspicuously above the signature line in all caps" advising mortgage loan borrowers of right to reject arbitration agreement in finding no procedural unconscionability); *accord In re Managed Care Litig*., 2009 WL 855963 at *5 (rejecting procedural unconscionability challenge that arbitration provision was hidden where its inclusion "just above the signature line in bold and all caps" "was placed in one of the most conspicuous spots on the Agreement"); *see also Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.,* 59 S.W.3d 505, 509 (Mo. 2001) ("The liability limitation here does not violate public policy, because it is clear, unambiguous, unmistakable, and conspicuously located directly above the signature.").

In ruling on this issue of procedural unconscionability, the trial court found

significant that the arbitration rider lacked an "opt out" provision that would have permitted the Wests to reject arbitration and still obtain the housing loan. In support of its ruling, the trial court looked to this Court's decision in *Ocwen Loan Servicing. See* 232 W.Va. at 358, 752 S.E.2d at 389. While this Court considered the "opt out" provision in *Ocwen Loan Servicing* as one fact that weighed against procedural unconscionability in that case, we did not suggest that the absence of such a provision is determinative. *See id.* To the extent the circuit court placed improper weight on Nationstar's failure to include an "opt out" provisions in the subject arbitration rider, the lower court's analysis was misguided. To clarify, the omission of an "opt out" provision in an agreement that permits the signatories to reject arbitration is just one of multiple factors to consider in evaluating a claim of procedural unconscionability. As a result, the omission of an "opt out" provision is not in itself sufficient evidence that an arbitration agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability. *See Sanders*, 228 W.Va. at 138, 717 S.E.2d at 922 (identifying lack of "opt out" provision as one factor trial court considered in affirming finding that adhesion contract was unconscionable); Syl. Pt. 9, *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 737 S.E.2d 550 (2012) ("A court in its equity powers is charged with the discretion to determine, on a case-by-case basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability."); *AT&T Mobility*, 226 W.Va. at 578, 703 S.E.2d at 549 ("[E]very case in which the issue of an unconscionable adhesion contract is raised must be

11

examined on the basis of the language of that particular contract in conjunction with the specific facts surrounding the dispute.").

Nationstar argues that the trial court wrongly imposed a burden on it to prove that the parties had specifically bargained for the inclusion of the arbitration clause. As this Court held in *Dan Ryan,* the enforceability of an arbitration clause does not require separate consideration when the contract as a whole is supported by adequate consideration. *See* 230 W.Va. at 283, 737 S.E.2d at 552, syl. pt. 6. Subsequently, in *Kirby v. Lion Enterprises, Inc.*, 233 W.Va. 159, 756 S.E.2d 493 (2014), we stated: "Applying the law enunciated in *Dan Ryan,* so long as the construction contract in its entirety is well supported by an offer, acceptance and sufficient consideration, there is no requirement that the arbitration clause be independently 'bargained for' in order for a contract to be formed." *Id.* at 165, 756 S.E.2d at 499. Under established law, Nationstar's inability to produce evidence that the arbitration rider was separately and specifically bargained should not have been utilized by the trial court as a basis for concluding that the agreement was procedurally unconscionable.

The trial court placed significance on its conclusion that the Wests did not fully appreciate their relinquishment of the right to utilize the court system. While they aver that "[t]he closing of our loan was conducted in a hurried manner, with the entire process lasting approximately fifteen to twenty minutes," the Wests do not complain that they were

12

denied the right to read the agreement or that they lacked the capacity to understand the arbitration clause. They do not assert they were coerced into signing the document. Neither do they contend they requested, and were denied, the opportunity to take further time to read and review the loan documents or to have a third party review them on their behalf. It has long been the rule that "'[a] party to a contract has a duty to read the instrument.' Syllabus point 5, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986)." Syl. Pt. 4, *American States Ins. Co. v. Surbaugh*, 231 W.Va. 288, 745 S.E.2d 179 (2013); *see also Grayiel v. Appalachian Energy Partners*, 230 W.Va. 91, 101, 736 S.E.2d 91, 101 (2012) (rejecting claim of grossly inadequate bargaining power where signatory "had ample time to seek counsel's advice before signing, there is no allegation that he was pressured into signing, and he signed on his own free will"). The fact that the Wests may have signed a document without reading it first does not excuse them from the binding effect of the agreements contained in the executed document. *See G&R Tire Distributors, Inc. v. Allstate Ins. Co.*, 411 A.2d 31, 34 (Conn. 1979) (recognizing that when "a person of mature years who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so").

Upon this Court's review of the record in this case, the grounds relied upon by the trial court to find this particular adhesion contract procedurally unconscionable are

13

not sustainable. While the bargaining power between the parties may have been unequal, it was not grossly unequal. *See Grayiel*, 230 W.Va. at 101, 736 S.E.2d at 101. Furthermore, the inclusion of an arbitration provision within a mortgage loan agreement does not strike this Court as "'beyond the reasonable expectations of an ordinary person, or [as an] oppressive or unconscionable term[].'"[14] *Brown I*, 228 W.Va. at 683, 724 S.E.2d at 287 (citation omitted). Nothing about the circumstances of the closing, which frankly comports with the *quotidianus* reality of real estate closings–hurried document execution with minimal comprehension by the signatories–suggests that the agreement is unenforceable based on principles of unfairness. Accordingly, we conclude that the Wests did not meet their burden of proving that the subject contract is procedurally unconscionable. *See Brown I*, 228 W.Va. at 680, 724 S.E.2d at 284.

## B. Substantive Unconscionability

As grounds for finding the arbitration clause substantively unconscionable, the trial court determined that the agreement lacked "mutual, reciprocal obligations among the parties" and further relied upon "the oppressive costs associated with arbitration." As this Court explained in *Brown I*, the focus of substantive unconscionability is on the nature of

---

[14]With the enactment of the Dodd-Frank Act on July 22, 2010, mandatory arbitration clauses can no longer be included in residential home loans. Because that legislation is not retroactive, it has no effect on the matter before us. *See Ocwen Loan Servicing*, 232 W.Va. at 355, 752 S.E.2d at 386.

the contractual provisions rather than on the circumstances surrounding the contract's formation:

> Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

228 W.Va. at 658, 724 S.E.2d at 262, syl. pt. 19.

In deciding that the arbitration agreement lacked sufficient mutuality to be enforceable, the trial court cited Nationstar's right to use the courts to effect a foreclosure, to obtain possession of the property subject to its credit interest, to seek injunctive relief or appointment of a receiver, and to pursue any claim based upon default. These exceptions, in the trial court's opinion, rendered the agreement "unduly favorable to Nationstar." In viewing mutuality as a *sine qua non* to enforcement of the arbitration agreement, the circuit court overlooked this Court's admonition in *Dan Ryan* "that a one-sided contract provision may not be unconscionable under the facts of all cases." 230 W.Va. at 290, 737 S.E.2d at 559. With clear emphasis, we stated: "'The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case.'" *Id.* (quoting *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261, syl. pt. 12, in part).

15

Contracts such as the mortgage loan at issue are uniquely recognized to allow lenders to carve out unilateral exceptions to arbitration. As we discussed in *Ocwen Loan Servicing*, numerous courts have found that a financial institution's right to protect its security interest combined with the need for compliance with statutory foreclosure procedures explains a lack of mutuality in certain loan agreements. *See* 232 W.Va. at 365, 752 S.E.2d at 396. We cited with approval the reasoning employed in *Miller v. Equifirst Corp.*, No. 2:00-0335, 2006 WL 2571634 (S.D. W.Va. Sept. 5, 2006): "'The exception for proceedings related to foreclosure is one that is not only common in arbitration agreements but quite necessary in order to effectuate foreclosure and a retaking of the subject property by lawful processes, where needed, without breach of the peace.'" 232 W.Va. at 365, 752 S.E.2d at 396 (quoting *Miller* at *11). Further authority upon which we relied in *Ocwen Loan Servicing* included *Torrance v. Aames Funding Corp.*, 242 F.Supp.2d 862 (D. Or. 2002). Noting that the excepted claims authorized for judicial resolution related to the lender's security interest, the court observed in *Torrance* that such claims "are heavily regulated by statute, allowing for streamlined procedures and effective protections for both sides." *Id.* at 872. Accordingly, the appellate court opined: "It does not strike this court as unreasonable, much less oppressive, to forego arbitration of such claims." *Id.; see also Lackey v. Green Tree Fin. Corp.*, 498 S.E.2d 898, 905 (S.C. App. 1998) (upholding arbitration clause that permitted lender to use judicial relief to enforce security agreement pertaining to manufactured home and observing that "[s]ecured transactions allow lenders

16

to take greater risks because their ability to protect a loan is enhanced by the legal right to recover and sell the collateral in the event of default").

Given a financial lender's need to utilize statutory procedures for purposes of effecting foreclosure and receivership, the fact that Nationstar is not required to arbitrate all of its claims that may arise under the credit transaction does not render the arbitration agreement unconscionable. This Court has made it clear that, rather than full bilaterality, only a modicum of bilaterality is required to avoid a determination of unconscionability. *See Sanders*, 228 W.Va. at 137, 717 S.E.2d at 921; *see generally Dan Ryan*, 230 W.Va. at 288-89, 737 S.E.2d at 557-58 (discussing lack of mutuality requirement under modern contract law). Without question, agreements related to mortgage loans that involve a lender's right to protect its security interest may require the use of the court system to enforce that security interest. Consistent with the rationale cogently articulated in *Ocwen Loan Servicing,* the provision of an exception to arbitration for disputes rooted in the need to effect a foreclosure or to protect a security interest does not *ipso facto* create an overly one-sided contract that is unreasonable or unfair.

The other basis relied upon by the circuit court in finding the arbitration clause substantively unconscionable was its reference to "the oppressive costs associated with arbitration." Nationstar correctly observes that the Wests have never stated that they are

17

unable to afford to pay any arbitration fees or costs.  Instead, they state that they "cannot afford substantial arbitration costs."  Similarly, the circuit court has provided this Court with no factual basis for its conclusion that the costs of arbitration are "oppressive."

At this point, the costs to be borne by the Wests as a result of arbitration are wholly speculative.  *See Dunlop*, 211 W.Va. at 551, 567 S.E.2d at 267, syl. pt. 4, in part (holding that party challenging costs as unreasonably burdensome has burden to prove "costs likely to be imposed"); *Heller v. TriEnergy, Inc.*, No. 5:12-CV-45, 2012 WL 2740870, at *13 (N.D. W.Va. July 9, 2012) (finding that conclusory allegation of unreasonable costs of arbitration absent evidence of such costs "is inadequate to show the costs likely to be imposed"); *Millas v. Morgan Stanley & Co.*, No. 08-CV-0573, 2008 WL 5095917, at *5 (S.D. Ill. Dec. 1, 2008) (rejecting "generic allegation of unfairness in the costs involved in arbitration" and recognizing that "'party must provide some individualized evidence to show that she is likely to face prohibitive costs . . . and that she is financially incapable of meeting those costs'") (citation omitted).  Under the agreement, Nationstar is responsible for the first $250 of arbitration and the arbitrator is charged with deciding who is ultimately responsible for paying the fees associated with the arbitration.[15]  The Wests maintain that the filing fees

---

[15]Nationstar submits that it is possible that the Wests might not be responsible for any arbitration fees.  Nationstar has agreed to arbitrate outside the AAA and submits that this would signficantly reduce any costs or fees associated with arbitration.  To date, the Wests have refused to proceed in a non-AAA forum, stating they will only submit to arbitration if Nationstar agrees to use the consumer rules of arbitration.  Under the consumer rules, the

18

under AAA are determined by the amount of recovery that is being sought and submit they could have to pay an initial filing fee of between $3,250 to $7,000.[16]

Upon our review of the record in this case, the basis for the trial court's decision that the arbitration agreement is substantively unconscionable is both legally and factually improper. The circuit court relied on a non-existent requirement of complete mutuality of obligations in finding the agreement unenforceable on grounds of substantive unconscionability. In determining that the costs of arbitration were necessarily oppressive, the circuit court relied upon a record devoid of evidence that the Wests could not pay the costs of arbitration. An unadorned averment, couched hypothetically, that they could not "afford substantial arbitration costs" is not sufficient to meet their burden of demonstrating that such costs would be unreasonably burdensome. *See Dunlop*, 211 W.Va. at 551, 567 S.E.2d at 267, syl. pt. 4. Accordingly, we determine that the Wests did not demonstrate that the arbitration agreement is substantively unconscionable.

---

Wests assert they would only be required to pay a $200 filing fee and the remaining costs of arbitration would be borne by Nationstar.

[16]The Wests claim that the circuit court made its determination of oppressive costs based "on a record replete with evidence of the high costs of commercial arbitration." Our review of the record submitted in this case revealed only one statement regarding costs and that was a reference by counsel to a filing fee of $4,350.

## IV.  Conclusion

Based on the foregoing, the decision of the Circuit Court of Putnam County is reversed,  and this matter is remanded for entry of an order referring the underlying case to arbitration.

Reversed and remanded.