# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Employee Resource Group, LLC,
and Charles Rice,
Petitioners**

**vs.) No. 16-0493 (Boone County No. 15-C-43)**

**Connie Harless,
Respondent**

**FILED**

**April 13, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

This appeal requires us to determine the enforceability of an arbitration agreement between an employer and its former employee. Petitioners Employee Resource Group, LLC ("ERG"), and Charles Rice, by counsel, Bradley K. Shafer, appeal the order of the Circuit Court of Boone County, West Virginia, denying their motion to enforce the parties' arbitration agreement. Petitioners argue the circuit court erred by finding the agreement procedurally and substantively unconscionable. Respondent Connie Harless, by counsel, Matthew M. Hatfield and Paul Frampton, Jr., filed a summary response in support of the circuit court's order.

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we conclude the circuit court erred in refusing to enforce the arbitration agreement. We therefore reverse the circuit court's April 29, 2016, order and remand this matter for referral to arbitration. This case presents no substantial question of law and satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for disposition by memorandum decision.

### I. Factual and Procedural Background

Ms. Harless was employed by ERG from 1984 to 2014; she worked as the general manager at the Wendy's restaurant in Danville, West Virginia. Ms. Harless alleged the following: she received reports that one of ERG's employees, Ronald Chafin, was sexually harassing female employees. In response to those reports, Ms. Harless advised Mr. Chafin that his actions were improper. Further, Ms. Harless reported the harassment to her immediate supervisor, Petitioner Charles Rice. Shortly thereafter, ERG terminated Ms. Harless' employment in January 2014.

In February 2015, Ms. Harless filed a lawsuit against Petitioners and alleged they "engaged in reprisals or other discriminatory actions" against her in violation of the West Virginia Human Rights Act. *See* W.Va. Code § 5-11-9(7)(c) (2013). Petitioners filed an Answer to the Complaint and a Motion to Enforce Arbitration Agreement. Petitioners argued that Ms.

1

Harless could not seek redress in circuit court for her claims against them, as she was a party to an arbitration agreement that required her to arbitrate any and all claims or disputes she had arising from her employment.

The agreement at issue is titled "Dispute Resolution Program." The agreement provides the "steps" that should be taken to resolve work-related problems: Step 1: Communication (an "open-door policy" encourages employees to talk directly to their immediate supervisor, and if not satisfied, to take concerns to the next higher level of management, or call the toll free "Hotline"); Step 2: Executive Review (of supervisor's decision); Step 3: Mediation (in mediation, the "Company will contact the American Arbitration Association (AAA) or similar organization specializing in dispute resolution); and Step 4: Arbitration. With regard to these steps, the agreement provides:

> While we encourage you to use all of the steps in the Program in the order outlined, we realize that in some cases it may not be appropriate to use the preliminary steps. Accordingly, if your claim involves a legal claim that is subject to arbitration hereunder, you may proceed directly to Step 3, Mediation, without first using Step 1, Communication or Step 2, Executive Review. The Company may skip Steps 1 and 2 if a legal claim is involved.

The agreement discusses the arbitration procedures[1] and lists the legal claims subject to arbitration,[2] as well as those claims not subject to arbitration.[3] The agreement states that the

---

[1] The AAA rules apply. Ms. Harless' portion of the filing fee "is limited to $125.00." ERG will pay the balance of the initial filing fee and "will pay the arbitrator's fee." If Ms. Harless establishes that she cannot pay her portion of the filing fee, ERG will pay her portion of the fee. The agreement provides the procedure for selecting a neutral arbitrator and states the hearing will be conducted in the community where Ms. Harless is employed "or in another mutually agreeable location."

[2] The claims subject to arbitration include, but are not limited to:
- claims for wages or other compensation;
- claims for breach of any contract, covenant or warranty (expressed or implied);
- tort claims (including, but not limited to, claims for physical, mental or psychological injury, but excluding statutory workers compensation claims);
- claims for wrongful termination;
- sexual harassment;
- discrimination (including, but not limited to, claims based on race, sex, religion, national origin, age, medical condition or disability whether under federal, state or local law);
- claims for benefits or claims for damages or other remedies under any employee benefit program sponsored by the Company (after exhausting administrative remedies under the terms of such plans);
- "whistleblower" claims under any federal, state or other governmental law, statute, regulation or ordinance;

provisions "are severable and, should any provision be held unenforceable, all others will remain valid and binding. No provision of the Program document will be held unenforceable if such provision can be reasonably interpreted in a manner that results in such provision being enforceable."[4]

The last page of the agreement, in bold print, states that

> **[w]hile this Program constitutes a binding promise between you and the Company to arbitrate all claims in dispute described in this Program Booklet, this Program is not and shall not be construed to create any contract of employment, expressed or implied. Nor does this Program in any way alter the "at-will" status of any employee. This Program will prevent you from filing a lawsuit in Court for individual relief for a legal claim subject to arbitration.**

---

- claims for a violation of any other non-criminal federal, state or other governmental law, statute, regulation or ordinance; and
- claims for retaliation under any law, statute, regulation or ordinance, including retaliation under any workers compensation law or regulation.

[3] The claims not subject to arbitration are:
- any claim by an employee for benefits under a plan or program which provides its own binding arbitration procedure;
- any statutory workers compensation claim; and
- unemployment insurance claims.

[4] The agreement also contains a delegation clause, providing that

[t]he arbitrators, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of the agreement to arbitrate including, but not limited to, any claim that all or any part of the agreement to arbitrate is void and voidable.

When arguing the motion to compel arbitration below, Petitioners did not assert that pursuant to this delegation clause, the arbitrator, and not the circuit court, should determine the validity of the agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) (holding that provision of employment agreement which delegated to arbitrator exclusive authority to resolve any dispute relating to agreement's enforceability was valid delegation under Federal Arbitration Act). Likewise, Petitioners did not raise any issue of delegation before this Court. At oral argument, counsel agreed that Petitioners' failure to assert this provision served as a waiver of this issue. *See In re Checking Account Overdraft Litig.*, 754 F.3d 1290 (11th Cir. 2014) (holding that bank waived its argument that arbitrator should determine validity of arbitration agreement). We therefore do not address the delegation issue.

Ms. Harless signed an acknowledgement of this agreement on March 21, 2005; the paragraph preceding her signature provided: "I hereby acknowledge that I received a copy of the Company's Dispute Resolution Program Booklet effective April 1, 2005[.] . . . I understand and agree that the Dispute Resolution Program shall apply to me."

In their motion to compel arbitration, Petitioners contended this Dispute Resolution Program constituted a contract between the parties to resolve their legal claims or disputes covered by its terms through binding arbitration. They relied upon language in the agreement which directed that binding arbitration is the "sole and exclusive final remedy for resolving any such claim or dispute." Ms. Harless filed a response to this motion and maintained the agreement was unenforceable because it was both procedurally and substantively unconscionable. After considering the briefs of the parties and hearing oral argument, the circuit court entered its order denying Petitioners' motion to enforce arbitration. It is from this ruling that Petitioners seek relief.

## II. Standard of Review

As this Court held in syllabus point one of *Credit Acceptance Corp. v. Front,* 231 W.Va. 518, 745 S.E.2d 556 (2013), "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Moreover, "[i]n cases, such as this, where the challenge to the arbitration clause is based on unconscionability, the issue presented is a question of law controlled by contract principles." *Nationstar Mortg., LLC v. West*, 237 W.Va. 84, 87-88, 785 S.E.2d 634, 637-38 (2016). As with all questions of law, our review of the circuit court's conclusion is plenary. *See* Syl. Pt. 1, *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, __ W.Va. __, 796 S.E.2d 574 (2017) ("When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."). We proceed to determine whether the circuit court committed error in refusing to refer the underlying matter to arbitration.

## III. Discussion

Petitioners argue the arbitration agreement is neither procedurally nor substantively unconscionable. "Whether an arbitration agreement was validly formed, and whether the claims maintained by the plaintiff fall within the scope of the agreement, are evaluated under state law principles of contract formation." *State ex rel. Richmond Am. Homes of W.Va., Inc. v. Sanders*, 228 W.Va. 125, 134, 717 S.E.2d 909, 918 (2011). This Court is mindful that

> [i]n determining whether the language of an agreement to arbitrate covers a particular controversy, the federal policy favoring arbitration of disputes requires that a court construe liberally the arbitration clauses to find that they cover disputes reasonably contemplated by the language and to resolve doubts in favor of arbitration.

*State ex rel. City Holding Co. v. Kaufman*, 216 W.Va. 594, 598, 609 S.E.2d 855, 859 (2004) (citations omitted).

As we observed in *Brown ex rel. Brown v. Genesis Healthcare Corp. ("Brown I")*, 228 W.Va. 646, 724 S.E.2d 250 (2011), *rev'd on other grounds sub nom. Marmet Health Care Center, Inc. v. Brown,* 132 S.Ct. 1201 (2012), "[t]he burden of proving that a contract term is unconscionable rests with the party attacking the contract." *Brown I*, 228 W.Va. at 680, 724 S.E.2d at 284. To conclude that a contractual term is unenforceable on grounds of unconscionability requires a finding that the provision in issue "is both procedurally and substantively unconscionable." *Id.* at 658, 724 S.E.2d at 262; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (recognizing procedural element focuses on oppression or surprise due to unequal bargaining power and substantive element focuses on overly harsh or one-sided results). We address these elements in turn.

A.

With regard to procedural unconscionability, this Court held in syllabus point seventeen of *Brown I* that:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies, include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

228 W.Va. at 657, 724 S.E.2d at 261.

The circuit court stated "the first indication that the arbitration agreement is procedurally unconscionable is that it is a contract of adhesion – allegedly offered to [Ms. Harless] as a 'this or nothing' condition of her employment." In addition, the circuit court found the signature page of the agreement was lacking in that it "failed to restate various provisions" contained in the agreement and did not contain the word "agreement." The circuit court concluded that Petitioners "have not provided any evidence that the procedure in which these 'acknowledgments' are presented to and obtained from an employee are reasonable and provide an opportunity for the employee to understand the terms."

Petitioners assert Ms. Harless failed to put forth sufficient evidence to meet *her* burden of showing the agreement is procedurally unconscionable. We agree. "Because contracts of adhesion are by definition typically prepared by a party with more power, we do not view that factor as persuasive in itself." *Nationstar Mortg.*, 237 W.Va. at 90, 785 S.E.2d at 640. Moreover, this Court has held that the omission of an "opt out" provision in an agreement that permits a party to reject arbitration is just one of multiple factors to consider in evaluating a claim of procedural unconscionability. *Id.* "As a result, the omission of an 'opt out' provision is not in itself sufficient evidence that an arbitration agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability." *Id.* Moreover, there is no evidence in the record to

5

show that the manner or setting in which Ms. Harless received the Dispute Resolution Booklet or signed the acknowledgment form prevented her from having a reasonable opportunity to understand the terms of the agreement. *See New v. GameStop, Inc.*, 232 W.Va. 564, 578, 753 S.E.2d 62, 76 (2013) ("'A court can assume that a party to a contract has read and assented to its terms, and absent fraud, misrepresentation, duress, or the like, the court can assume that the parties intended to enforce the contract as drafted.'") (quoting *Adkins v. Labor Ready, Inc.,* 185 F.Supp.2d 628, 638 (S.D. W.Va. 2001). Ms. Harless' "bald assertions that the arbitration agreement is procedurally unconscionable because the agreement was not subject to negotiation and because she . . . had no other 'meaningful alternatives available to her' other than to sign" the agreement "are simply not sufficient." *GameStop*, 232 W.Va. at 578, 753 S.E.2d at 76. As in *GameStop*, it is "beyond cavil" here that the stated purpose of the acknowledgment was to make clear to Ms. Harless that, as a condition of her employment with ERG, she agreed to submit all covered disputes to arbitration. Accordingly, we conclude that Ms. Harless has failed to demonstrate that the arbitration agreement is procedurally unconscionable.

B.

We next examine the issue of substantive unconscionability. As this Court held in syllabus point nineteen of *Brown I,* the focus of substantive unconscionability is on the nature of the contractual provisions:

> Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

228 W.Va. at 658, 724 S.E.2d at 262.

As grounds for finding the arbitration agreement substantively unconscionable, the circuit court found the agreement had certain penalties that served to "discourage plaintiffs from actually pursing their claims." It based this conclusion on Ms. Harless' challenges to the following two provisions of the agreement, listed under "Arbitration Fees and Costs":[5]

---

[5] The circuit court also determined the requirement that the parties go to mediation (Step 3) prior to arbitration created an unnecessary "roadblock" for Ms. Harless. In her summary response, Ms. Harless devotes two sentences to her argument that the mediation requirement is "indicative" of substantive unconscionability; she cites no case law in support of this position. However, Petitioners did not file a motion with the circuit court seeking to be referred to mediation. Instead, Petitioners requested to have this matter sent directly to arbitration and clearly stated they waived mediation.

4. The arbitrator may assess attorneys' fees against a party upon showing by the other party that the first party's claim is frivolous or unreasonable or factually groundless.

5. If either party pursues a legal claim covered by the Dispute Resolution Program in court by any means other than arbitration, the responding party shall be entitled to stay or dismissal of such action, the remand of such action to arbitration, and the recovery of all costs and attorneys' fees and expenses related to such action.

Petitioners assert that these terms of the agreement are not substantively unconscionable. We agree. As we held in syllabus point ten of *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 737 S.E.2d 550 (2012):

In assessing whether a contract provision is substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation. If a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable.

As previously established, the Dispute Resolution Program is a mutual agreement under which both parties agree to resolve their disputes: "This policy describes the steps that both you and the Company must take to resolve many types of workplace problems. The Company is also obligated to follow the Program and will also be bound by arbitration." We find the provisions challenged by Ms. Harless are not overly harsh and in no way create "a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to" Petitioners. *See Dan Ryan Builders,* 230 W.Va. at 282, 737 S.E.2d at 552, syl. pt. 10.

Several state appellate courts have held that provisions shifting attorneys' fees are unconscionable in the arbitration context. These cases, however, all involved unilateral, rather than bilateral fee-shifting provisions. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1024-25 (9th Cir. 2016) (collecting cases and recognizing "plaintiffs have not identified any case where a state appellate court held that a bilateral clause awarding attorneys' fees and costs to prevailing party was unconscionable, whether in an arbitration or nonarbitration context."). The agreement at issue here does not have a mandatory fee shifting provision. The fact that the arbitrator *may* assess fees against either party if it finds the claim is frivolous or unreasonable or factually groundless is not sufficient grounds to find the agreement unenforceable; it is a discretionary, bilateral clause. Moreover, Ms. Harless' potential costs and fees at this point are wholly speculative.

In addition, the agreement provides:

3. Each party shall be responsible for its own attorneys' fees and related litigation expenses, if any; however, if any party prevails on a statutory claim, which allows the prevailing party to be awarded attorneys' fees . . . the arbitrator may award reasonable fees to the prevailing party.

7

Therefore, the agreement does not thwart the effective vindication of Ms. Harless' statutory rights under the West Virginia Human Rights Act; the arbitrator may award her attorneys' fees and costs if she prevails on those claims.[6] We, therefore, conclude that Ms. Harless has failed to demonstrate that the arbitration agreement is substantively unconscionable.

## IV. Conclusion

The circuit court erred by not referring this matter to arbitration in accordance with the parties' agreement. We therefore reverse the order of the circuit court and remand this matter for referral to arbitration.

Reversed and remanded.

**ISSUED:**  April 13, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**CONCURRING AND WRITING SEPARATELY:**

Justice Margaret L. Workman

---

[6] *See* W.Va. Code § 5-11-13(c) (2013) ("In any action filed under this section, if the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay or any other legal or equitable relief as the court deems appropriate. In actions brought under this section, the court in its discretion may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant.").

Workman, J., concurring:

I am left with a nagging sense of unfairness as to the way Ms. Harless has been treated by Petitioners. In fact, were it not for the formidable pro-arbitration policy expressed by Congress and repeatedly upheld by the United States Supreme Court, I would have dissented and found that Ms. Harless was entitled to litigate her claims before a jury of her peers in the Circuit Court of Boone County.

However, as the United States Supreme Court stated in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991): "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act] FAA." *Id.* at 26. In *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the Court held an employment agreement which clearly and unmistakably required employees to arbitrate federal statutory claims was enforceable. *See* Timothy H. Howlett & Christina K. McDonald, *Mandatory Arbitration of Employment Claims an Update*, 92-SEP Mich. B.J., (September 2013) (stating employees can now explicitly waive rights to litigate host of statutory employment discrimination claims in mandatory arbitration agreements).

The agreement at issue in this case specifically provided the legal claims subject to arbitration include "claims for wrongful termination; sexual harassment; [and] discrimination (including, but not limited to, claims based on race, sex, religion, national origin, age, medical condition or disability whether under federal, state or local law)[.]" Moreover, the agreement specifically mentions statutory claims and provides "if any party prevails on a statutory claim, which allows the prevailing party to be awarded attorneys' fees . . . the arbitrator may award reasonable fees to the prevailing party." Therefore, under a fair reading of *Gilmer* and *14 Penn Plaza*, Ms. Harless is contractually obligated to submit her legal claims to binding arbitration. For this reason, I can in good conscience join the majority's legally-sound decision.[7]

I write separately to call attention to two important legal issues necessarily implicated by our decision that were ignored by the parties. First, this Court should remain mindful that whenever we find an arbitration agreement trumps an individual's right to a jury trial, we are dealing with issues that encompass fundamental rights and liberties.

> The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment.[8] A right so fundamental and sacred to the citizen, whether

---

[7] In addition, Ms. Harless did not submit sufficient evidence to meet her burden of showing the agreement was unconscionable under State law principles of contract. "An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." Syl. Pt. 3, *Troy Mining Corp. v. Itmann Coal Co.,* 176 W.Va. 599, 346 S.E.2d 749 (1986).

[8] The Seventh Amendment to the Constitution of the United States provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of

guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.

*Jacob v. City of N.Y.*, 315 U.S. 752, 752-53 (1942) (footnote added); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 343-44 (1979) (J. Rehnquist dissenting) ("The founders of our Nation considered the right of trial by jury in civil cases an important bulwark against tyranny and corruption, a safeguard too precious to be left to the whim of the sovereign, or, it might be added, to that of the judiciary. . . . Those who favored juries believed that a jury would reach a result that a judge either could not or would not reach.").

Second, the powerful declaration of policy set forth in the 1967 West Virginia Human Rights Act provides that

[i]t is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property. Equal opportunity in the areas of employment and public accommodations is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or disability. Equal opportunity in housing accommodations or real property is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, blindness, disability or familial status.

The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

W.Va. Code § 5-11-2 (2013).

Regrettably, the substance and spirit of this Act – along with the valued right of a trial by jury in a civil case – have been marginalized to simple contract terms swept away in a form agreement prepared by a powerful out-of-State corporation. I am troubled that

[t]he practical effect of enforcing these provisions is a paradigmatic shift in our civil justice system – no longer is it based upon the fundamental right of trial by jury. A person cannot open a bank account, obtain a credit card, buy a car, or use

---

trial by jury shall be preserved[.]" *See also Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446 (1830) ("One of the strongest objections originally taken against the constitution of the United States, was the want of an express provision securing the right of trial by jury in civil cases. As soon as the constitution was adopted, this right was secured by the seventh amendment of the constitution proposed by congress; and which received an assent of the people so general, as to establish its importance as a fundamental guarantee of the rights and liberties of the people.").

a cell phone without contracting away the Seventh Amendment right to a jury trial. In reality, a person must yield his or her very access to the courts in order to meaningfully participate in our modern society. Slowly but surely, the widespread enforcement of mandatory arbitration clauses has chipped away at the basic tenets of contract law and of the fundamental freedoms upon which our nation was founded: the right to a jury trial in civil cases.

Judge Craig Smith & Judge Eric V. Moye, *Outsourcing American Civil Justice: Mandatory Arbitration Clauses in Consumer and Employment Contracts*, 44 Tex. Tech L.Rev. 281, 282 (2012) (footnotes omitted).

The agreement at issue in this case is a disturbing example of how an average citizen's right to a jury trial in a civil matter is vanishing before our very eyes. I submit that Congress should take action to reverse this tide.

What must Congress do? Recently, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act – which spawned the Consumer Financial Protection Bureau (CFPB). As of this writing, the CFPB has taken steps to educate consumers about the perils of hidden and complicated arbitration provisions in contracts. But, the CFPB's activities are not enough. Exceedingly large populations of unsophisticated employees also need assistance because they are increasingly forced to arbitrate state and federal claims. In recent years, numerous bills have been introduced in Congress to address the concerns raised in this article. Enactment of any one of those proposed acts would effectively end the Supreme Court's unconscionably biased pro-arbitration policies, and allow unsophisticated employees and consumers to litigate their contractual and statutory claims in courts of law – before a jury of their peers rather than before a private arbitrator.

Willy E. Rice, *Unconscionable Judicial Disdain for Unsophisticated Consumers and Employees' Contractual Rights? – Legal and Empirical Analyses of Courts' Mandatory Arbitration Rulings and the Systematic Erosion of Procedural and Substantive Unconscionability Defenses Under the FAA*, 25 B.U. Pub. Int. L.J. 143, 237-38 (2016) (footnotes omitted).

We can only hope that decisions, like the one reached herein, appear to Congress as the distress flags that they are, and that Congress will implement better safeguards to the FAA to ensure that the legal rights of unsophisticated employees are protected. Congress should not continue to countenance the practice by which employers take unfair advantage of employees by requiring their consent to arbitrate disputes as a condition of employment.