IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 17-0644

_____

FILED

**April 30, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

RENT-A-CENTER, INC. and RENT-A-CENTER, EAST, INC.,
Defendants Below, Petitioners

v.

ANITA ELLIS,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Mercer County
The Honorable Mark Wills, Judge
Civil Action No. 16-C-375

REVERSED AND REMANDED
_____

Submitted: January 29, 2019
Filed: April 30, 2019

Richard Wallace, Esq.
LITTLER MENDELSON, PC
Charleston, West Virginia

Edward F. Berbarie, Esq., *Pro Hac Vice*
Robert F. Friedman, Esq., *Pro Hac Vice*
LITTLER MENDELSON, PC
Dallas, Texas

Counsel for the Petitioners

Jerome J. McFadden, Esq.
Law Offices of Jerome McFadden, PLLC
Princeton, West Virginia

James D. McQueen, Esq.
McQueen Davis, PLLC
Huntington, West Virginia

Counsel for the Respondent

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.

**SYLLABUS BY THE COURT**

1.     "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2.     "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syllabus Point 1, *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W.Va. 465, 796 S.E.2d 574 (2017).

3.     "A 'delegation provision' is a clause, within an agreement to arbitrate, which clearly and unmistakably provides that the parties to the agreement give to the arbitrator the power to decide the validity, revocability or enforceability of the arbitration agreement under general state contract law." Syllabus Point 4, *Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W. Va. 379, 787 S.E.2d 650 (2016).

4.     "Under the Federal Arbitration Act, 9 U.S.C. § 2, there are two prerequisites for a delegation provision to be effective. First, the language of the delegation provision must reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator. Second, the delegation provision must itself be valid,

i

irrevocable and enforceable under general principles of state contract law." Syllabus Point 7, *Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W. Va. 379, 787 S.E.2d 650 (2016).

5.     "Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, where a delegation provision in a written arbitration agreement gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's challenge to the arbitration agreement.  When an arbitration agreement contains a delegation provision, the trial court must first consider a challenge, under general principles of state law applicable to all contracts, that is directed at the validity, revocability or enforceability of the delegation provision itself."  Syllabus Point 5, *Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W. Va. 379, 787 S.E.2d 650 (2016).

6.     "The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written.  The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case."  Syllabus Point 12, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011).

7.	"Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies, include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011).

8.	"The omission of an 'opt out' provision in an agreement that permits the signatories to reject arbitration is just one of multiple factors to consider in evaluating a claim of procedural unconscionability. As a result, the omission of an 'opt out' provision is not in itself sufficient evidence that an arbitration agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability." Syllabus Point 2, *Nationstar Mortg., LLC v. West*, 237 W. Va. 84, 785 S.E.2d 634 (2016).

WALKER, CHIEF JUSTICE:

After Respondent Anita Ellis was terminated from employment, she filed workers' compensation discrimination claims against Petitioners Rent-A-Center, Inc. and Rent-A-Center East, Inc. Relying on the arbitration agreement that Respondent signed at the time she was hired, Petitioners moved to compel arbitration. Respondent challenged the arbitration agreement's delegation clause, which required that any challenge to the interpretation, applicability, enforceability or formation of the agreement be resolved by the arbitrator and not any court, on the grounds that it was ambiguous, unconscionable and in violation of West Virginia Code § 23-2-7 (2017). The circuit court found the delegation clause unconscionable and refused to enforce the arbitration agreement. On appeal, Petitioners contend that the delegation clause should have been enforced and the matter sent to arbitration. Because the delegation clause was neither unconscionable nor unenforceable, we reverse the circuit court and remand this case for an order compelling arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When Respondent was hired by Petitioners in March of 2011 as an assistant manager, she signed a "Mutual Agreement to Arbitrate Claims" (arbitration agreement). The agreement states that it is governed by the Federal Arbitration Act (FAA), that it applies mutually to both parties, and that the mutual obligation to arbitrate differences "[p]rovide[s] consideration for each other." The arbitration agreement includes a "Claims Covered by the Agreement" section that states:

1

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of my application for employment, assignment/employment, and/or the termination of my assignment/employment

. . . .

. . . The claims covered by this Agreement include, but are not limited to: . . . tort or statutory claims for discrimination (including, but not limited to, . . . workers' compensation); . . . and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance . . . .

Under the "Arbitration Procedures" section, the agreement includes the following delegation clause:

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or part of this Agreement is void or voidable.

Just above the Respondent's signature line on the agreement, the following appears in bold, capitalized letters:

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT; THAT I UNDERSTAND ITS TERMS; THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT; AND THAT I HAVE ENTERED INTO THE AGREEMENT NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT THE COMPANY AND I ARE GIVING UP OUR RIGHTS

2

TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT, I AM AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT THAT I WISH TO DO SO.

On April 8, 2014, Respondent injured her right shoulder while moving a refrigerator at work. She filed a workers' compensation claim and received temporary total disability (TTD) benefits for the period April 23, 2014, through May 15, 2014. By letter dated November 28, 2014, Petitioners terminated Respondent from employment effective November 11, 2014. The stated reason for termination was Respondent's absences from work.

On October 8, 2015, Respondent sought to re-open her workers' compensation claim. She was awarded TTD benefits for the period of May 19, 2014, through December 17, 2014. Respondent then filed a complaint in the Circuit Court of Mercer County in which she alleged that Petitioners unlawfully terminated her while she was off work due to a compensable injury and for which she received or was eligible to receive TTD benefits in violation of West Virginia Code §§ 23-5A-1 and -3(a) (2017).

Petitioners filed a motion to dismiss or stay the case and compel arbitration arguing that Respondent's claim is covered under the arbitration agreement. Petitioners further argued that, to the extent Respondent challenges the enforceability or applicability of the arbitration agreement, the agreement's delegation clause requires that those challenges be decided by the arbitrator and not the circuit court.

Respondent opposed Petitioners' motion to compel on three grounds. First, Respondent argued that the delegation clause was ambiguous and failed to reflect an unmistakable intent by the parties to delegate to the arbitrator the determination of gateway issues of arbitrability. Second, Respondent asserted that the delegation clause was unconscionable under West Virginia common law contract principles. Third, Respondent alleged that the delegation clause is invalid because it violates West Virginia Code § 23-2-7, which provides that "[n]o employer or employee shall exempt himself from the burden or waive the benefits of [the workers compensation statute] by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void."

In an order entered June 22, 2017, the circuit court denied Petitioners' motion to compel. The court determined that the arbitration agreement was both procedurally and substantively unconscionable and that there was no mutual agreement to arbitrate. In finding that the arbitration agreement was procedurally unconscionable, the

4

circuit court placed significance on the fact that the arbitration provision was a non-negotiable term in an adhesion contract, and the Respondent was not permitted to opt out of or alter the provision. The circuit court also noted that the Respondent did not have the same level of sophistication or understanding about the arbitration clause as the Petitioners' attorneys who drafted the language, and found that she likely had no meaningful opportunity to seek counsel.

In finding substantive unconscionability, the circuit court determined that the agreement substantially impaired a plaintiff's right to pursue remedies for their losses such as a class action suit, which was expressly waived in the agreement, and that it would deprive the Respondent of a statutory remedy that exists to benefit and protect workers that have the claims set forth in West Virginia Code § 23-5A-3. The circuit court also concluded that there was a lack of a real and voluntary meeting of the minds, there was an overall imbalance and one-sidedness to the agreement, and there was no real choice or bargaining on the part of the Respondent, as her only alternative to signing the agreement was not taking the job. Further, it found that the consideration for the agreement "that both parties agree to arbitrate," was an "illusory promise" and was therefore inadequate. This appeal followed.

## II. STANDARD OF REVIEW

5

Petitioners appeal the circuit court's denial of its motion to compel arbitration and to dismiss. This Court has held previously that "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."[1] We have also held that "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."[2] Further, "we apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract."[3] Applying this standard, we proceed to determine whether the circuit court committed error in refusing to refer the underlying matter to arbitration.

## III. ANALYSIS

The parties assert various assignments and cross-assignments of error, all of which pertain to one central issue—whether the delegation clause in the arbitration agreement between the parties should have been enforced. Petitioners assert that the circuit court erred in denying their motion to compel arbitration because the delegation clause clearly assigns the arbitrator "the exclusive authority to resolve any dispute relating to the . . . applicability, enforceability, or formation of . . . the arbitration agreement." Petitioners

---

[1] Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

[2] Syl. Pt. 1, *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W.Va. 465, 796 S.E.2d 574 (2017).

[3] *Zimmerer v. Romano*, 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009).

6

contend that in *Rent-A-Center, West, Inc. v. Jackson*,[4] the United States Supreme Court enforced the identical delegation clause and found that it clearly delegated the gateway issues of arbitrability to the arbitrator. Thus, Petitioners contend the FAA mandates that an arbitrator and not the circuit court should have determined whether the arbitration agreement is unenforceable.[5]

Reiterating the arguments she made below, Respondent asserts that the delegation clause is (1) ambiguous and fails to reflect an unmistakable intent to delegate to the arbitrator the determination of gateway issues of arbitrability; (2) unconscionable under West Virginia common law contract principles; and (3) invalid because it violates West Virginia Code § 23-2-7. Before we consider the parties' arguments, we set forth the legal framework that controls the arbitration agreement and delegation clause at issue.

## A.    Delegation of Arbitrability

As the United States Supreme Court has explained, "[p]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."[6] This can be

---

[4] 561 U.S. 63 (2010).

[5] *See id*. at 70 ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

[6] *Id.* at 68-69.

accomplished by a specific term in the arbitration agreement, known as a delegation provision. As we have held, "[a] 'delegation provision' is a clause, within an agreement to arbitrate, which clearly and unmistakably provides that the parties to the agreement give to the arbitrator the power to decide the validity, revocability or enforceability of the arbitration agreement under general state contract law."[7]

In discussing delegation provisions, we have described their purely contractual nature:

> The way that courts treat a delegation provision within an arbitration agreement should reflect the principle that arbitration is purely a matter of contract. In their contract, the parties may agree that questions about the validity, revocability or enforceability of an arbitration agreement under state contract law will be delegated from a court to an arbitrator. "Because the parties are the masters of their collective fate, they can agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is subject to arbitration."[8]

In considering a challenge to the same arbitration agreement we examine in this case, the United States Supreme Court discussed how the severability doctrine applies to delegation provisions in *Rent-A-Center, West*. In that case, Jackson filed an employment-discrimination suit against Rent-A-Center in a Nevada federal court. Rent-A-Center filed a motion to dismiss or stay the proceedings and to compel arbitration based

---

[7] Syl. Pt. 4, *Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W. Va. 379, 787 S.E.2d 650 (2016).

[8] *Id.* at 389, 787 S.E.2d at 660 (citing *Bruni v. Didion*, 73 Cal.Rptr.3d 395, 407 (Cal.Ct.App. 2008)) (footnotes omitted).

on the arbitration agreement Jackson signed as a condition of his employment.[9]  Rent-A-Center asserted that the arbitration agreement had a provision delegating to the arbitrator, "exclusive authority to resolve any dispute relating to . . . the enforceability" of the arbitration agreement.[10]  In response, Jackson contended that the arbitration agreement was unenforceable because it was unconscionable under state law.[11]  Importantly, Jackson did not challenge the delegation provision separate from the arbitration agreement.  The district court agreed with Rent-A-Center and compelled arbitration.[12]  On appeal, the Ninth Circuit reversed, holding that where "a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court."[13]

In reversing the Ninth Circuit, the Supreme Court severed the delegation provision from the remainder of the arbitration agreement and explained that, unless Jackson challenged the delegation provision specifically, it must be treated as valid and must be enforced, leaving any challenge to the to the validity of the arbitration agreement

---

[9] *Rent-A-Center, West,* 561 U.S. at 65.

[10] *Id.* at 66.

[11] *Id.*

[12] *See Jackson v. Rent-A-Center, West, Inc.*, 2007 WL 7030394, *2 (D.Nev. June 7, 2007).

[13] *See Jackson v. Rent-A-Center, West, Inc.*, 581 F.3d 912, 917 (9th Cir. 2009).

as a whole for the arbitrator.[14]  It concluded that Jackson had only challenged the validity of the contract as a whole because he raised a challenge to the delegation provision for the first time in his appeal to the Supreme Court, which the Court determined was too late and would not be considered.[15]  However, the high court went on to illustrate how Jackson *could have* argued that the delegation provision, as opposed to the arbitration agreement as a whole, was "unconscionable"—and therefore unenforceable—because of the limitations on arbitral discovery and the fee-splitting procedures.  It reasoned:

> Jackson's other two substantive unconscionability arguments assailed arbitration procedures called for by the contract—the fee-splitting arrangement and the limitations on discovery—procedures that were to be used during arbitration under *both* the agreement to arbitrate employment-related disputes *and* the delegation provision.  It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court.  To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the [arbitration] Agreement is unenforceable to be unconscionable.  That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination.    Jackson, however, did not make any arguments specific to the delegation provision; he argued that

---

[14] *Rent-A-Center, West*, 561 U.S. at 72.

[15] *Id.* at 75–76 (citing *Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273-74 (2009)).

10

the fee-sharing and discovery procedures rendered the *entire* Agreement invalid.[16]

We examined the *Rent-A-Center, West* holding in *Schumacher Homes of Circleville, Inc. v. Spencer* (*Schumacher Homes II*),[17] and held that delegation clauses will be enforced if there is a "clear and unmistakable intent" to delegate these gateway issues to the arbitrator, and if the delegation provision is valid and enforceable under general principles of state contract law.[18] In *Schumacher Homes II*, the petitioner argued that the arbitration agreement delegated questions regarding unconscionability to the arbitrator for resolution. The arbitration clause in the contract in that case stated, "that any claim, dispute or cause of action, of any nature . . . shall be subject to final and binding arbitration by an arbitrator[.]"[19] The arbitration clause also included language that Schumacher contended was a delegation provision, stating, "[t]he arbitrator(s) shall determine all issues regarding

---

[16] *Id.* at 74 (emphasis in original).

[17] 237 W.Va. 379, 787 S.E.2d 650 (2016).

[18] *See id.* at Syl. Pt. 7 ("Under the Federal Arbitration Act, 9 U.S.C. § 2, there are two prerequisites for a delegation provision to be effective. First, the language of the delegation provision must reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator. Second, the delegation provision must itself be valid, irrevocable and enforceable under general principles of state contract law.").

[19] *Id.* at 384, 787 S.E.2d at 655.

11

the arbitrability of the dispute." Nowhere in the contract was the term "arbitrability" defined for the parties.[20]

Applying *Rent-A-Center, West*, we determined in *Schumacher Homes II* that because a delegation provision is a mini-arbitration agreement divisible from both the broader arbitration clause and the even broader contract in which the delegation provision and arbitration clause are found, a party must specifically object to the delegation provision in order for a court to consider the challenge.[21] A party resisting delegation to an arbitrator of any question about the enforceability of an arbitration agreement must specifically challenge the delegation provision first.[22] To that end, we held that:

> Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, where a delegation provision in a written arbitration agreement gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's challenge to the arbitration agreement. When an arbitration agreement contains a delegation provision, the trial court must first consider a challenge, under general principles of state law applicable to all contracts, that is directed at the validity, revocability or enforceability of the delegation provision itself.[23]

We also explained the practical effect of this holding:

---

[20] *Id.*

[21] *Id.* at 389-90, 787 S.E.2d. at 660-61.

[22] *Id.*

[23] *Id*. at Syl. Pt. 5.

12

> [u]nder this rule, if the trial court finds the delegation provision to be effective, then the case must be referred to the parties' arbitrator who can then decide if the arbitration agreement is invalid, revocable or unenforceable. Conversely, if the delegation provision is ineffective on a ground that exists at law or in equity for the revocation of any contract, then the trial court may examine a challenge to the arbitration agreement.[24]

Similar to the facts presented in *Rent-A-Center, West*, the home buyer in *Schumacher II* never specifically challenged the delegation language before the circuit court or this Court. So, we held that the home buyer waived any right to challenge the delegation language and we remanded the case to the circuit court and directed that the parties' dispute regarding the validity, revocability, or enforceability of the arbitration agreement be referred to arbitration.[25]

## B.    Challenging the Delegation Clause

Although we acknowledged that the rule created by the Supreme Court in *Rent-A-Center, West* seemed to be "intricate and complex," we made it clear in *Schumacher Homes II* that it is possible to oppose enforcement of a delegation provision. As we cautioned, "the FAA does not require all claims to be sent to arbitration merely

---

[24] *Id.* at 390, 787 S.E.2d at 661.

[25] *Id.* at 392, 787 S.E.2d at 663.

13

because there is a delegation provision."[26]  Because delegation clauses and "agreements to arbitrate are severable does not mean that they are unassailable."[27]

### (1)    *Clear and Unmistakable Intent*

In determining whether the delegation clause in this case is enforceable, we must first discern whether the language of the delegation provision reflects "a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability and enforceability of the arbitration agreement to an arbitrator."[28]  As we explained in *Schumacher Homes II*, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."[29]  "Parties are only bound to arbitrate those issues that by clear and unmistakable writing they have agreed to arbitrate," and an "agreement to arbitrate will not be extended by construction or implication."[30]  The "clear and unmistakable" test reflects a "heightened

---

[26] *Id.* at 391, 787 S.E.2d at 662.

[27] *Id.* (citing *Rent-A-Center, West*, 561 U.S. at 71).

[28] *Id.* at Syl. Pt. 7.

[29] *Id.* at 391, 787 S.E.2d at 662 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 944.)

[30] *Id.* (citing Syl. Pt. 10, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011) ("*Brown I*"), *overruled on other grounds by Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530 (2012)).

14

standard" of proof of the parties' "manifestation of intent."[31] This heightened standard was adopted

> because the question of who would decide the unconscionability of an arbitration provision is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter. Thus, the Supreme Court has decreed, a contract's silence or ambiguity about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard.[32]

Respondent contends the delegation clause is ambiguous—meaning that it does not clearly and unmistakably reflect the parties' intent to arbitrate the question of arbitrability—because it does not state that the arbitrator shall determine what is "arbitrable" nor is it explicitly labeled as a "delegation clause." The delegation clause in this case states:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, a claim that all or any part of this Agreement is void or voidable.

Respondent asserts that the scope of the arbitrator's authority is unclear, as it is uncertain whether the authority given to the arbitrator is given in the context of the "run-of-the-mill" disputes and claims that are being arbitrated, or whether this authority grants the arbitrator the power to address gateway issues of arbitrability. Respondent further contends that

---

[31] *Id.* (citing *Rent-A-Center*, 561 U.S. at 70 n.1).

[32] *Id.* (citing *Ajamian v. CantorCO2e, L.P.*, 137 Cal.Rptr.3d 773, 782 (Cal.Ct.App. 2012)).

because the agreement is ambiguous, Petitioners fail to meet their burden of proof to reflect an unmistakable intent to delegate to the arbitrator the determination of gateway issues of arbitrability. Thus, the delegation clause must be construed against Petitioners and in favor of Respondent.

Petitioners counter that the delegation clause is not ambiguous because it states that it provides "exclusive authority" to the arbitrator "to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or part of this Agreement is void or voidable." Petitioners argue that the delegation provision could not be clearer and was upheld in *Rent-A-Center, West*.

In *Rent-A-Center, West*, Jackson did not dispute the district court's finding that the agreement to arbitrate clearly and unmistakably provided the arbitrator with the exclusive authority to decide whether the agreement was enforceable, and the delegation clause was not specifically challenged. So, the high court enforced the delegation clause and this issue was not addressed on the merits.[33] But, when we examine the delegation

---

[33] *See Jackson v. Rent-A-Center, West*, 561 U.S. at 69 n.1 (noting that "Jackson did not dispute [before the Ninth Circuit or the Supreme Court] that the text of the Agreement was clear and unmistakable."); *see also Kabba v. Rent-A-Center, Inc.*, 730 Fed.Appx. 141, 143 (2018) ("[T]he mere fact that the Supreme Court upheld the exact agreement as valid in *Rent-A-Center* does not answer the question of whether the parties in this case manifested an intention to be bound by the same agreement.")

16

clause at issue, here, we find that it clearly and unmistakably designates authority to the arbitrator to decide whether the arbitration agreement is enforceable. In footnote twenty-seven of *Schumacher Homes II*, we noted that the very delegation clause at issue in this case, which was examined by the United States Supreme Court in *Rent-A-Center, West*, provided "an example of a clear delegation provision."[34] Also, in *House v. Rent-A-Center Franchising International, Inc.*,[35] the United States District Court for the Southern District of West Virginia determined that this same delegation provision was "clear and concise." In examining this delegation clause, the district court stated:

> Language designating authority to an arbitrator cannot be made any clearer. If agreements incorporating by reference the rules of the American Arbitration Association (AAA), which in turn references a delegation provision, have been upheld by courts, surely a concise statement within the agreement itself satisfies the clear and unmistakable test.[36]

The district court determined that "the parties' intent is clearly and unmistakably incorporated by the arbitration agreement, and both parties signed the documents agreeing to be bound."[37] In light of our own previous assessment of the delegation clause at issue, and that of the Southern District of West Virginia, we reject Respondent's assertion that

---

[34] *Schumacher Homes II*, 237 W. Va. at 389 n.27, 787 S.E.2d at 660 n.27.

[35] 2016 WL 7394552 (S.D.W. Va. Dec. 21, 2016).

[36] *House*, 2016 WL 7394552 at \*6 (citing *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 1:11cv371, 2013 WL 1332028, at \*5 (E.D. Va. March 29, 2013) (collecting cases from seven circuits upholding references to the AAA rules)).

[37] *House*, 2016 WL 7394552 at \*6.

the clause is ambiguous and find that it clearly and unmistakably demonstrates the parties'

intent to delegate the issues of arbitrability to the arbitrator.

**(2)** *Validity*

We must next decide, under *Schumacher Homes II*, whether the delegation

clause itself is valid, irrevocable and enforceable under general principles of state contract

law. On this issue, we stated in *Schumacher Homes II* that:

> Questions about the validity, revocability, and enforceability of a provision delegating a problem with the enforceability or scope of an arbitration clause are resolved by looking to state contract law. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."[38]

We also explained that "[n]othing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides

normal rules of contract interpretation. Generally applicable contract defenses—such as

laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate

an arbitration agreement."[39] We made it clear that "[a]ny generic state-law contract

principle may be employed to invalidate a severed delegation provision within an

---

[38] *Schumacher Homes II*, 237 W. Va. at 391, 787 S.E.2d at 662 (citing *First Options*, 514 U.S. at 944).

[39] *Id.* (citing Syl. Pt. 9, *Brown I,* 228 W.Va. at 657, 724 S.E.2d at 261).

arbitration agreement; the only caveat is that the principle cannot be aimed at arbitration agreements alone.[40]

Before the circuit court and in her cross-assignments of error here, Respondent argues that the delegation clause was invalid because it was unconscionable under state law and in violation of West Virginia Code § 23-2-7. Petitioners contend that the only challenge Respondent made to the delegation clause *itself*, in addition to her argument that the delegation clause was ambiguous and arcane, was that the delegation clause lacks mutuality. Thus, they argue that these were the only arguments the circuit court should have considered. Petitioners assert that Respondent's remaining challenges, and all of the unconscionability grounds relied upon by the circuit court to deny Petitioners' motion to compel, are directed at the arbitration agreement as a whole.

The circuit court's order is not a model of clarity. Throughout its order, the circuit court's findings focus on the arbitration agreement generally, not the delegation clause specifically.[41] These findings lack any analysis of the law applicable to delegation

---

[40] *Id.*

[41] The circuit court's order recognized that this was a challenge to the delegation clause when it observed, "The plaintiff argues that the delegation clause in the employment contract is unconscionable" and it specifically addressed the delegation clause holding that "the Court FINDS and CONCLUDES that the delegation clause in the contract is unconscionable." However, in so finding, the circuit court improperly reasoned, "*the agreement* is both procedurally and substantively unconscionable;" "enforcing the *arbitration agreement* would deprive the Plaintiff from a statutory remedy that exists in

clauses. And, in making findings directed at the arbitration agreement as a whole, the circuit court's analysis fails to comport with *Rent-A-Center,West*.[42] Despite the flaws in the circuit court's reasoning, after careful review of Respondent's arguments here and before the circuit court, we find that Respondent challenged the delegation provision itself, rather than impermissibly focusing on the arbitration agreement as a whole. Thus, we proceed to review the validity of the delegation clause.

### (a) *Unconscionability*

In examining unconscionability, this Court has used a two-step approach. "Under West Virginia law, we analyze unconscionability in terms of two components parts: procedural unconscionability and substantive unconscionability. . . . To conclude that a contractual term is unenforceable on grounds of unconscionability requires a finding that

---

West Virginia . . .;" "[t]here was a lack of a real and voluntary meeting of the minds, an overall imbalance and one-sidedness to *the agreement*;" and "the consideration for *the agreement* is that both sides agree to arbitrate." (Emphasis added).

[42] *See Rent-A-Center*, *West*, 561 U.S. at 74 ("It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court.") (emphasis in original); *see also Schumacher Homes II*, at Syl. Pt. 5; *Thornton v. First Nat'l Bank Credit Card*, No. 3:12-0492, 2012 WL 4356280, at *3 (S.D. W. Va. 2012) (finding that unconscionability arguments focused on the entire arbitration agreement were for the arbitrator to determine in light of a delegation clause assigning to arbitration "any issue concerning the validity, enforceability or scope of this agreement.")

the provision in issue 'is both procedurally and substantively unconscionable.'"[43] We have explained that "[a]lthough both forms of unconscionability need to be present, the court 'should apply a sliding scale' to determine whether a contract is unconscionable, finding that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability [will be] required."[44] We are mindful that

> "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case."[45]

As we observed in *Brown I,* "[t]he burden of proving that a contract term is unconscionable rests with the party attacking the contract."[46]

### (i) *Procedural Unconscionability*

In *Brown I*, we explained what courts should consider in assessing procedural unconscionability:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural

---

[43] *Nationstar Mortgage, LLC v. West*, 237 W. Va. 84, 88, 785 S.E.2d 634, 638 (2016) (quoting *Brown I*, 228 W. Va. at 658, 724 S.E.2d at 262, Syl. Pt. 20, in part).

[44] *Brown I* at Syl. Pt. 20, in part.

[45] *Brown I* at Syl. Pt. 12.

[46] *Id.* at 680, 724 S.E.2d at 284.

21

unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies, include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.[47]

Respondent contends that the arbitration agreement and the delegation clause at issue are part of a contract of adhesion, as they are part of a preprinted, form contract drafted by the defendant with no opportunity for her to alter any terms of the agreement— a take-it-or-leave-it deal. Respondent maintains that both the arbitration agreement and the delegation clause are procedurally unconscionable because there is grossly unequal bargaining power and sophistication between her (a high school graduate with little understanding of the law) and Petitioners (large corporate entities that are highly experienced in drafting and litigating arbitration agreements and delegation clauses). Respondent asserts that while Petitioners have extensive experience regarding the litigation of this delegation clause, she had never before seen it and certainly not before entering into her agreement with the Petitioners.

---

[47] *Id*. at Syl. Pt. 17.

22

Respondent also argues that the circumstances under which she reviewed and signed the document containing the delegation clause were controlled by her employer, making it difficult for her to review and understand the clause. Respondent contends that on her first day of employment, she was directed by her manager to sign numerous documents in quick succession and she did not see the arbitration agreement again until the motion to compel was filed. She argues that she was never advised that the forms she was signing "involved legal matters;" and the delegation clause consists of "one sentence of text" in four to five pages of "densely fine print." She maintains that there was simply no time for her to read the documents that were placed in front of her or to reasonably understand the terms of the delegation clause.

Petitioners contend that their motion to compel arbitration should have been enforced—despite the fact that the circuit court found that (1) the agreement to arbitrate was nonnegotiable; (2) Respondent could not opt out or alter it; (3) the parties' levels of sophistication were unequal; (4) Respondent had no chance to seek counsel; and (5) there was no true bargained-for exchange—because similar findings were recently rejected by this Court in *Nationstar Mortgage, LLC v. West.*[48]

---

[48] 237 W.Va. 84, 785 S.E.2d 634 (2016).

In *Nationstar Mortgage, LLC v. West*, a case involving a mortgagee's motion

to compel arbitration, we found that, although the arbitration agreement very likely was a

contract of adhesion, the fact that it was prepared by a party with more power, lacked an

opt-out provision allowing for some choice in the matter, and was perceived to lack

separate consideration did not make the agreement procedurally unconscionable.[49]

In so finding, we acknowledged the realities of consummating standardized

business transactions and the attendant unworkability of individualized bargaining, and

stated:

> [c]ourts around the country have recognized that the
> need for pre-printed form contracts is a stark reality of today's
> mass-production/consumer culture. Despite even severe
> disparities in bargaining power, these agreements are most
> often enforced, at least as long as they comport with the
> reasonable expectations of the parties. A contrary rule would
> slow commerce to a crawl.[50]

As we explained, contracts of adhesion are routinely executed without the signatory's full

reading or comprehension of the specified terms:

> [c]ustomers do not in fact ordinarily understand or even
> read the standard terms. They trust to the good faith of the
> party using the form and to the tacit representation that like
> terms are being accepted regularly by others similarly situated.
> *But they understand that they are assenting to the terms not*

---

[49] *Id.* at 90–91, 785 S.E.2d at 640–41.

[50] *Id.* at 89, 785 S.E.2d at 639 (quoting *In re Managed Care Litig.*, No. 00-1334-MD, 2009 WL 855963, at *5 (S.D.Fla. 2009)).

> *read or not understood, subject to such limitations as the law*
> *may impose.*[51]

We noted that in reviewing an adhesion contract, we must examine whether "it imposes terms beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable terms."[52] Because contracts of adhesion are by definition typically prepared by a party with more power, we did not view that factor as persuasive by itself.[53] Further, in assessing the circuit court's determination that Nationstar's failure to include an opt-out provision in its arbitration rider was significant in ruling on the issue of procedural unconscionability, we held in Syllabus Point 2 that:

> The omission of an "opt out" provision in an agreement that permits the signatories to reject arbitration is just one of multiple factors to consider in evaluating a claim of procedural unconscionability. As a result, the omission of an "opt out" provision is not in itself sufficient evidence that an arbitration

---

[51] *Id.* at 89, 785 S.E.2d at 639 (emphasis in original) (quoting *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 558, 567 S.E.2d 265, 274 (2002) (internal citations omitted)).

[52] *Id.* (quoting *Brown I*, 228 W.Va. at 683, 724 S.E.2d at 287 (citation omitted); *State ex rel. Richmond American Homes v. Sanders*, 228 W.Va. 125, 135, 717 S.E.2d 909, 918–19 (2011) (explaining that unconscionability analysis requires inquiry into fairness of contract as whole based on facts and circumstances of particular case, observing that "contractual provisions may be unconscionable in some situations but not in others")).

[53] *Nationstar*, 237 W. Va. at 90, 785 S.E.2d at 640 (citing *Williams v. Jo-Carroll Energy, Inc.*, 890 N.E.2d 566, 571 (Ill. 2008) ("[J]ust because a contract is prepared by a party in a superior bargaining position, without allowing the other party to negotiate any terms, does not mean that an included arbitration clause is unconscionable."); *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W.Va. 341, 358, 752 S.E.2d 372, 389 (2013) (rejecting procedural unconscionability challenge to an arbitration agreement based, in part, on failure of record to support trial court's finding that mortgage loan borrowers "lacked sophistication and financial knowledge to a degree that rendered the contract unenforceable")).

agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability.[54]

Like Respondent here, the petitioners in *Nationstar* contended that their loan closing was conducted in a hurried manner, not allowing the opportunity to appreciate their relinquishment of the right to utilize the court system. In rejecting the petitioners' argument, we noted that the petitioners were not complaining (1) that they had been denied the right to read the arbitration agreement; (2) that they lacked the capacity to understand the arbitration clause; (3) that they were coerced into signing the document; or (4) that they were denied the opportunity to take more time to read and review the loan documents, or to have a third party review them. We also reiterated that "a party to a contract has a duty to read the instrument,"[55] and the fact that the petitioners "may have signed a document without reading it first [did] not excuse them from the binding effect of the agreements contained in the executed document."[56] For these reasons, we find Respondent's argument unavailing.

---

[54] *Nationstar* at Syl. Pt. 2.

[55] *Id.* at 91, 785 S.E.2d at 641 (quoting Syl. Pt. 5, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986); Syl. Pt. 4, *American States Ins. Co. v. Surbaugh*, 231 W. Va. 288, 745 S.E.2d 179 (2013); and citing *Grayiel v. Appalachian Energy Partners*, 230 W.Va. 91, 101, 736 S.E.2d 91, 101 (2012) (rejecting claim of grossly inadequate bargaining power where signatory "had ample time to seek counsel's advice before signing, there is no allegation that he was pressured into signing, and he signed on his own free will.")).

[56] *Id.* (citing *G & R Tire Distribs., Inc. v. Allstate Ins. Co.*, 411 A.2d 31, 34 (Conn. 1979) (recognizing that when "a person of mature years who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so"); *see also*

Respondent also asserts that the very arcane nature of the delegation clause, "agreeing to arbitrate issues of arbitrability," supports the fact that there was no real and voluntary meeting of the minds. Respondent notes that in *First Options Chicago v. Kaplan*,[57] Justice Breyer noted:

> On the other hand, the former question—the "who (primarily) should decide arbitrability" question—is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. Cf. Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1508-1509 (1959), cited in *Warrior & Gulf*, 363 U.S., at 583, n. 7, 80 S.Ct., at 1353, n. 7. And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.[58]

Conversely, Petitioners contend, and we agree, that while the issue of who decides arbitrability is arcane when an agreement is silent or ambiguous in this regard, it is for that very reason that FAA jurisprudence requires that parties must "clearly and

---

*New v. GameStop, Inc.*, 232 W.Va. 564, 578, 753 S.E.2d 62, 76 (2013) ("'A court can assume that a party to a contract has read and assented to its terms, and absent fraud, misrepresentation, duress, or the like, the court can assume that the parties intended to enforce the contract as drafted.'") (internal citations omitted).

[57] 514 U.S. 938 (1995).

[58] *First Options*, 514 U.S. at 945 (internal citations omitted).

unmistakably" agree to arbitrate questions of arbitrability in order for that agreement to be enforceable.[59] Because we have determined that the delegation clause at issue is clear and unmistakable, this issue has no merit. For these reasons, we conclude that the grounds relied upon by the circuit court to find the delegation clause procedurally unconscionable were erroneous.

### (ii)    *Substantive Unconscionability*

To prevail on her unconscionability argument involving the delegation clause at issue here, Respondent must show both procedural and substantive unconscionability, at least in some measure.[60] Because we conclude that no procedural unconscionability exists with respect to the delegation clause, we need not evaluate whether substantive unconscionability exists.[61] But, even if Respondent had succeeded in her procedural unconscionability argument, she has failed to demonstrate substantive unconscionability.

---

[59] *Id.* at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakabl[e]' evidence that they did so.")

[60] *See Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 289, 737 S.E.2d 550, 558 (2012).

[61] *Hampden Coal Co., LLC v. Varney*, 240 W. Va. 284, 295, 810 S.E.2d 286, 297 (2018) ("Mr. Varney must establish both substantive and procedural unconscionability before the Agreement can be deemed unenforceable. . . . Inasmuch as we have determined that the Agreement is not substantively unconscionable, we need not address the issue of procedural unconscionability.")

This Court recently reiterated in *Nationstar* that "the focus of substantive unconscionability is on the nature of the contractual provisions rather than on the circumstances surrounding the contract's formation."[62] We stated:

> Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.[63]

Respondent challenges the delegation clause as substantively unconscionable under West Virginia Code § 23-2-7 because it results in an improper exemption from burdens and a waiver of benefits under our workers' compensation statute. West Virginia Code § 23-5A-3 provides, in part, that

> (a) It shall be a discriminatory practice within the meaning of section one of this article to terminate an injured employee while the injured employee is off work due to a compensable injury within the meaning of article four of this chapter and is receiving or is eligible to receive temporary total disability benefits, unless the injured employee has committed a separate dischargeable offense.

West Virginia Code § 23-2-7 also provides that, "No employer or employee shall exempt himself from the burden or waive the benefits of this chapter by any contract, agreement,

---

[62] *Nationstar*, 237 W. Va. at 91–92, 785 S.E.2d at 641–42.

[63] *Id*. (quoting Syl. Pt. 19, *Brown I*, 228 W.Va. at 658, 724 S.E.2d at 262).

rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void." Respondent argues that § 23-5A-3 and § 23-5A-1 allow access to the circuit court and to a jury to enforce and address claims of unlawful discrimination when the worker is fired while in a protected status or because he or she filed a workers compensation claim.

Conversely, Petitioners maintain that because the delegation clause itself does not affect any burdens or benefits arising under the worker's compensation statute, Respondent's challenge under West Virginia Code § 23-2-7 is actually directed at the provision of the agreement requiring arbitration of her underlying worker's compensation discrimination claim. We agree. Numerous courts have similarly rejected substantive unconscionability arguments directed at the arbitration agreement, itself, rather than the terms of the delegation provision.[64] Thus, under the FAA and U.S. Supreme Court precedent, the question of whether the parties' arbitration agreement violates West Virginia Code § 23-2-7 is for an arbitrator to decide, not this Court.

---

[64] *See Rent-A-Center, West,* 561 U.S. at 74 (finding that plaintiff's substantive unconscionability arguments were not tailored to the delegation provision itself); *House v. Rent-A-Center Franchising Int'l, Inc.,* 2016 WL 7394552 at *5 (rejecting plaintiff's unconscionability arguments that were targeted at the arbitration agreement as a whole rather than the delegation provision itself); *see also May v. Nationstar Mortg.,* LLC, 2012 WL 3028467 at *10 (N.D.W. Va. July 25, 2012) (finding that although plaintiff challenged delegation provision as substantively unconscionable, she failed to expand and attack the delegation provision specifically).

Respondent also alleges that the delegation clause is substantively unconscionable because it lacks mutuality. Specifically, she claims that the threshold question of arbitrability is decided by an arbitrator who has a financial interest in ruling in favor of the defendant and for arbitration, rather than for the plaintiff and against arbitration. In several opinions discussing the unconscionability doctrine, we have noted that "the lack of mutuality in a contractual obligation—particularly in the context of arbitration—is an element a court may consider in assessing the substantive unconscionability of a contract term."[65] For instance, in *Brown v. Genesis Healthcare Corp.* (*Brown II*), we stated that:

> Substantive unconscionability may manifest itself in the form of "an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." "Some courts suggest that mutuality of obligation is the locus around which substantive unconscionability analysis revolves." "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability."[66]

Petitioners contend that Respondent's argument is antiquated and based on a mistrust of arbitration, which has been repeatedly rejected by the United States Supreme

---

[65] *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 289, 737 S.E.2d 550, 558 (2012).

[66] 229 W.Va. 382, 393, 729 S.E.2d 217, 228 (2012) (internal citations omitted). *See also, State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 228 W.Va. 125, 137, 717 S.E.2d 909, 921 (2011) ("In assessing substantive unconscionability, the paramount consideration is mutuality.").

Court.[67] Further, they claim that the delegation clause here does not lack mutuality because both parties are bound by it equally. It requires arbitration for "any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or part of this Agreement is void or voidable" whether by or against the employee or employer. Petitioners contend, and we agree, that the arbitration agreement also contains mutual promises by both parties to arbitrate disputes covered by the agreement, which constitutes sufficient consideration to support the agreement.[68] This mutuality is far more than the "modicum of bilaterality" required by our Court in employment arbitration agreements.[69] Thus, we find nothing in the delegation clause upon which to conclude that it lacks mutuality.

---

[67] *See, e.g.*, *14 Penn Plaza, LLC v. Pyett*, 556 U.S. at 269 ("At bottom, objections centered on the nature of arbitration do not offer a credible basis for discrediting the choice of that forum to resolve statutory antidiscrimination claims."); *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 89–90 (2000) ("generalized attacks" resting on "suspicion of arbitration" must be rejected).

[68] *Citizens Telecomms. Co. of W. Va. v. Sheridan*, 239 W. Va. 67, 75, 799 S.E.2d 144, 152 (2017) ("mutual commitments to arbitrate alone constitute sufficient consideration to support the contract.") (quoting *Toney v. EQT Corp.*, No. 13-1011, 2014 WL 2681091 at \*3 (W. Va. June 13, 2014)); *see also Reed v. Darden Rests., Inc.*, 213 F.Supp.3d 813, 818 (S.D.W. Va. 2016) ("The only consideration required to enforce an arbitration agreement is that both parties are bound by the resolution format.") (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) ("no consideration [is required] above and beyond the agreement to be bound by the arbitration process" (internal quotation marks and citation omitted)).

[69] *See Nationstar*, 237 W. Va. at 92, 785 S.E.2d at 642 (". . . rather than full bilaterality, only a modicum of bilaterality is required to avoid a determination of unconscionability."); *Brown II*, 229 W.Va. at 393, 729 S.E.2d at 228 ("Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." (citations omitted)).

## IV. CONCLUSION

Because we have determined that the delegation clause clearly and unmistakably evinces the parties' intent to send gateway questions of arbitration to an arbitrator and that is also valid, the circuit court should have referred the parties' arguments about the enforceability of the arbitration agreement to the arbitrator.[70] For these reasons, we reverse the circuit court's June 23, 2017 order, and remand the case to the circuit court with directions to refer the Respondent's challenge to the enforceability of the arbitration agreement to an arbitrator, in accordance with the parties' contract.

Reversed and remanded.

---

[70] *Schumacher Homes II*, 237 W. Va. at 392, 787 S.E.2d at 663.